## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| LATRICE MILBOURNE, | : | CIVIL ACTION |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | NO.  11-cv-1866-JD |
| | : | |
| RONALD BAKER, BADGE # 6446; | : | |
| JUSTIN MONTGOMERY, BADGE # | : | |
| 9236; CITY OF PHILADELPHIA | : | |
| POLICE DEPARTMENT; CITY OF | : | |
| PHILADELPHIA; ALBERT G. HITE, | : | |
| | : | |
| **Defendants.** | : | |

_____

**DuBOIS, J.**                                                                            **May 23, 2012**

# M E M O R A N D U M

**TABLE OF CONTENTS**

**I. INTRODUCTION** .......................................................................................................... 3

**II. BACKGROUND** ........................................................................................................... 3

    **A. The Altercation at the Sunoco Store** ...................................................................... 3

    **B. The Investigation of the Alleged Assault** ................................................................ 4

    **C. The Surveillance Video** ........................................................................................... 5

    **D. Arrest and Prosecution of Plaintiff** ......................................................................... 5

**III. LEGAL STANDARD** ................................................................................................. 7

**IV. DISCUSSION** ............................................................................................................. 7

    **A. Claims Against the City of Philadelphia Police Department** ................................ 9

    **B. "Official Capacity" Claims** .................................................................................... 9

    **C. Count I—State Law Claim for Unlawful Arrest** .................................................. 9

        **1. Claim Against the City of Philadelphia** ............................................................. 9

        **2. Individual-Capacity Claim Against Detective Montgomery** ........................... 10

            **a. Political Subdivision Tort Claims Act** ......................................................... 11

**b. Warrantless Arrest of Plaintiff** ........................................................................... **12**

**3. Conclusion** ..................................................................................................... **16**

**D. Count II—Section 1983 Claim for Illegal Seizure** ......................................... **17**

**1. Fourth Amendment Reasonableness Standard** .......................................... **17**

**2. Qualified Immunity** ....................................................................................... **19**

**3. Conclusion** ..................................................................................................... **21**

**E. Count IV—Malicious Prosecution** ................................................................... **22**

**1. Malicious Prosecution Under the United States Constitution** ................... **22**

**a. Initiation of a Criminal Proceeding** ......................................................... **23**

**2. Malicious Prosecution Under Pennsylvania Law** ...................................... **24**

**a. First Element—Initiation of a Criminal Proceeding** ............................... **25**

**b. Second Element—Criminal Proceedings Ended in Plaintiff's Favor** .................. **26**

**c. Third Element—Probable Cause** ............................................................... **27**

**d. Fourth Element—Malice** ........................................................................... **28**

**e. Conclusion** .................................................................................................. **29**

**F. Count III—Civil Conspiracy** ........................................................................... **29**

**G. Count V—Claims Against the City of Philadelphia** ...................................... **31**

**V. CONCLUSION** ..................................................................................................... **31**

## I. INTRODUCTION

This is a civil rights case. Plaintiff Latrice Milbourne filed an Amended Complaint against Officer Ronald Baker, Officer Albert Hite, and Detective Justin Montgomery of the Philadelphia Police Department; the City of Philadelphia Police Department; and the City of Philadelphia arising out of her arrest and prosecution for simple assault, recklessly endangering another person, and harassment. In the Amended Complaint, plaintiff asserts claims under 42 U.S.C. § 1983 for violations of her Fourth Amendment rights and state-law claims for false arrest and malicious prosecution.

Plaintiff and defendants have both filed motions for summary judgment. For the reasons that follow, the Court grants in part and denies in part Defendants' Motion for Summary Judgment[1] and denies Plaintiff's Motion for Summary Judgment.

## II. BACKGROUND

### A. The Altercation at the Sunoco Store

The facts of this case center on a physical altercation that took place some time between 3:30 p.m. and 4:30 p.m. on March 20, 2009, between plaintiff, a black female, and Nichole Lundell, a white female who is not a party to this case. According to plaintiff, Ms. Lundell shouted a racial slur at her as plaintiff was filling her car with gasoline at the gasoline pump outside the Sunoco A-Plus convenience store ("Sunoco Store" or "Store") at 2360 Penrose Avenue in Philadelphia. (Am. Compl. 4.) Plaintiff alleges that when she entered the Store, Ms.

---

[1] Defendants' Motion is titled "Defendants' Motion for Partial Summary Judgment." However as defendants' counsel pointed out in the transmittal letter to the Court accompanying the Motion, Defendants seek summary judgment as to all claims. Thus, the Court will refer to it as Defendants' Motion for Summary Judgment.

Lundell confronted her with more racial slurs, "and when [p]laintiff tried to respond, [Ms. Lundell] started punching and hitting her, continuing to [use racial slurs]." (Id. 4–5.)

Ms. Lundell told the police a different story. She stated that she and plaintiff had a verbal altercation at the gasoline pump area outside the Sunoco Store involving a traffic dispute. (Arrest Report, Defs.' Mot. Summ. J. Ex. C, at 15.) According to Ms. Lundell, plaintiff followed her into the Store, continued the verbal altercation, and began punching and kicking her. (Id.)

### B. The Investigation of the Alleged Assault

Ms. Lundell reported the altercation to Officers Hite and Baker soon after it took place. (Defs.' Statement Undisputed Facts, Defs.' Mot. Summ. J. Ex. A ("Defs.' SOF"), ¶ 1; Incident Report, Defs.' Mot. Summ. J. Ex. C, at 12.) Detective Montgomery[2] interviewed Ms. Lundell shortly thereafter. (Detective Justin Montgomery's Answers Objections Pl.'s Interrogs., Defs.' Mot. Summ J. Ex. B, ("Montgomery Answers") at ¶ 5.) During that interview, Ms. Lundell described plaintiff as a black female in her late twenties, approximately five feet, four inches tall, with a thin build, wearing blue jeans, tan boots, and a light-colored jacket. (Defs.' SOF ¶ 2; Investigation Interview Record, Defs.' Mot. Summ. J. Ex. C, at 20–21.)

After interviewing Ms. Lundell, Detective Montgomery went to the Sunoco Store to continue the investigation. (Defs.' SOF ¶ 6) At the same time, plaintiff returned to the Store to find witnesses who would support her account of the altercation. (Id. ¶ 8; Am. Compl. 5.) At the store, Detective Montgomery viewed a surveillance video of the altercation, see infra Section II.C, and verified that plaintiff, whom he saw at the Store, was involved. (Defs.' SOF ¶ 7.) He then approached plaintiff, told her that Ms. Lundell had accused plaintiff of assaulting her, and

---

[2]     The Complaint refers to Detective Montgomery as Officer Montgomery. Mr. Montgomery is a detective and this Memorandum will refer to him as such.

asked plaintiff to go to the police station. (Id. ¶ 9) Plaintiff acknowledged that she was involved in the altercation and agreed to go to the police station to provide her account. (Id. ¶ 10.) Detective Montgomery summoned Officers Hite and Baker to accompany plaintiff to the station. (Id. ¶¶ 11–12.) Detective Montgomery returned to the station after directing another officer to make a copy of the surveillance video. (Id. ¶¶ 13–14)

### C. The Surveillance Video

Defendants attached a copy of the surveillance video to their Motion for Summary Judgment. The video shows Ms. Lundell waiting in line at the Sunoco Store. As Ms. Lundell makes a purchase at the checkout counter, plaintiff enters the store and begins talking to Ms. Lundell. Plaintiff turns to leave, but as she reaches the door, Ms. Lundell turns to her and says something. Plaintiff walks back to Ms. Lundell and a fight starts. It is unclear from the video who struck the first blow and which party, if any, was acting in self-defense. However, the video supports part of Ms. Lundell's account of the altercation in that it shows plaintiff following Ms. Lundell into the store and approaching her moments before the altercation begins.

The video shows the fight lasting less than a minute. In the video, plaintiff and Ms. Lundell exchange blows before plaintiff eventually wrestles Ms. Lundell to the ground. Bystanders pull plaintiff off Ms. Lundell and help Ms. Lundell to her feet. Plaintiff leaves the store immediately thereafter.

### D. Arrest and Prosecution of Plaintiff

Later that night, Detective Montgomery met Ms. Lundell's father, who introduced himself as a high-ranking member of the Darby Township Police Department. (Montgomery Answers ¶ 10.) Although plaintiff alleges that Ms. Lundell's father encouraged Detective Montgomery to arrest and prosecute plaintiff for the alleged assault, (Pl.'s Resp. to Defs.' Mot.

Summ. J. 24), Detective Montgomery avers that he "did not talk about the incident" with Ms. Lundell's father, (Montgomery Answers ¶ 10). One page of the police file states "HAVE A DELAWARE DETECTIVE RESPONDING ALSO (HE'S IN A MARKED UNIT) HE IS THE FATHER OF THE FEM COMPL." (Pl.'s Mot. Summ. J. Ex. K.)

At approximately 8:00 p.m., after plaintiff had arrived at the police station, Detective Montgomery arrested her for simple assault, recklessly endangering another person, and harassment. (Defs.' SOF ¶ 17.) Simple assault and recklessly endangering another person are misdemeanors under Pennsylvania law. 18 Pa. Cons. Stat. § 2701 (simple assault); id. § 2705 (recklessly endangering another person). Harassment is a summary offense. Id. § 2709. Detective Montgomery arrested plaintiff without a warrant. Plaintiff was handcuffed, photographed, fingerprinted, and held at the police station for approximately eighteen hours. (Defs.' SOF ¶ 23.)

On March 21, 2009, Assistant District Attorney Antoinette Pender-Brown issued a Criminal Complaint against plaintiff for simple assault, recklessly endangering another person, and harassment. (Criminal Complaint, Defs.' Mot. Summ. J. Ex. D-1, at 39.) Plaintiff was released on her own recognizance on March 21, 2009, and ordered to attend a hearing on April 30, 2009. (Certification of Bail and Discharge, Defs.' Mot. Summ. J. Ex. D-1, at 41.) The conditions of her release were as follows: (1) plaintiff was to appear on April 30, 2009, and all future court dates; (2) plaintiff was to comply with all orders of the court; (3) plaintiff was to inform the clerk of the court of any change of address; (4) plaintiff was to refrain from interfering with any witness to the crime; and (5) plaintiff was to refrain from all criminal activity. (Id.)

On October 26, 2009, the criminal charges against plaintiff were dismissed because the complaining witness—Ms. Lundell—failed to appear at the trial. (Docket for Commonwealth v. Milbourne, Defs.' Mot. Summ. J. Ex. D-2, at 4.)

## III. LEGAL STANDARD

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law" and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## IV. DISCUSSION

The Amended Complaint contains five counts. Count I asserts a state-law claim against Detective Montgomery for unlawful arrest. Count II makes a claim under 42 U.S.C. § 1983 against Detective Montgomery, the City of Philadelphia, and the City of Philadelphia Police

7

Department for unlawful seizure arising from the arrest. In Count III, plaintiff asserts a claim of civil conspiracy under both state law and § 1983 against Officer Hite, Officer Baker, and Detective Montgomery. Count IV makes a claim for malicious prosecution under both state law and § 1983 against Detective Montgomery. Finally, in Count V, plaintiff claims that the City of Philadelphia and the City of Philadelphia Police Department are liable under a theory of supervisory liability. Plaintiff makes all claims against the individual defendants in their individual and official capacities. (Am. Compl. ¶¶ 2–4.)

For the reasons that follow, the Court grants Defendants' Motion for Summary Judgment as to all federal claims[3] and all claims against the City of Philadelphia and the City of Philadelphia Police Department. The Court denies Defendants' Motion for Summary Judgment as to plaintiff's state-law unlawful-arrest, conspiracy, and malicious-prosecution claims. The Court denies Plaintiff's Motion for Summary Judgment

---

[3]     Although the Court concludes that it is appropriate to grant summary judgment in favor of defendants with respect to all federal claims, the Court elects to retain supplemental jurisdiction over plaintiff's state law claims. Such retention is discretionary. See 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a [state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." (emphasis added).) The parties have litigated this case in this Court for over a year and have conducted extensive discovery. They have filed voluminous motions for summary judgment, and the Court is very familiar with the issues in the case. Thus, the Court elects to retain jurisdiction in the interest of judicial economy, convenience, and fairness to the parties. Cf. Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." (emphasis added)). The Court also notes that defendants have requested that the Court retain jurisdiction over plaintiff's state law claims. (Defs.' Mem. Law Supp. Mot. Summ. J. 25.)

### A. Claims Against the City of Philadelphia Police Department

Defendants argue, and plaintiff agrees, that claims against the City of Philadelphia Police Department should be dismissed with prejudice because the City of Philadelphia Police Department does not have an independent corporate existence. See Regalbuto v. City of Phila., 937 F. Supp. 374, 377 (E.D. Pa. 1995) ("Defendants correctly argue that as a matter of law, the suit must be dismissed against the Philadelphia Police and Fire Departments because they are not separate legal entities that can be sued."). The Court grants Defendants' Motion for Summary Judgment with respect to all claims against the City of Philadelphia Police Department.

### B. "Official Capacity" Claims

Plaintiff asserts all claims against Officer Hite, Officer Baker, and Detective Montgomery in both their official and individual capacities. "Official capacity" claims are properly treated as claims against the municipality—in this case, the City of Philadelphia. Kentucky v. Graham, 473 U.S. 159, 165–66 (1985); Stana v. Sch. Dist. of Pittsburgh, 775 F.2d 122, 130 (3d Cir. 1985). Thus, the Court will treat all claims against defendants Hite, Baker, and Montgomery in their official capacities as claims against the City of Philadelphia.

### C. Count I—State Law Claim for Unlawful Arrest

In Count I, plaintiff asserts a state-law claim against Detective Montgomery in his individual capacity and his official capacity. As stated above, the Court will treat the official-capacity claim as a claim against the City of Philadelphia. The Court will address the two claims in turn.

#### 1. Claim Against the City of Philadelphia

The Pennsylvania Political Subdivision Tort Claims Act ("PSTCA") immunizes municipalities from liability for all state-law tort claims. See Smith v. Sch. Dist. of Philadelphia,

112 F. Supp. 2d 417, 424 (E.D. Pa.2000). The Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. § 8541. The City of Philadelphia is a "local agency" for the purposes of the Act. See id. § 8501; Fulginiti v. City of Philadelphia, No. 08–1752, 2010 WL 2510369, at *3 (E.D. Pa. June 15, 2010). While the Act provides eight exceptions to this grant of immunity, none are applicable to this case. See id. § 8542(b) (listing the following eight categories: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals). Accordingly, the City of Philadelphia is immune from plaintiff's claim for unlawful arrest, see Russoli, 126 F. Supp. 2d at 867–68, and the Court grants Defendants' Motion for Summary Judgment on Count I as asserted against Detective Montgomery in his official capacity.

### 2. Individual-Capacity Claim Against Detective Montgomery

To determine whether plaintiff's claim in Count I against Detective Montgomery in his individual capacity succeeds, the Court must analyze two questions: (1) whether the PSTCA bars plaintiff's claim, and (2) whether plaintiff has satisfied the elements of unlawful arrest under Pennsylvania law. For the reasons that follow, the Court concludes that there is a genuine dispute of material fact as to the first question. With respect to the second question, the Court concludes that there is no genuine dispute of material fact that plaintiff has satisfied the elements of unlawful arrest under Pennsylvania law. Thus, if the jury concludes that the PSTCA does not bar plaintiff's claim in Count I against Detective Montgomery in his individual capacity, Detective Montgomery will be liable for unlawful arrest under Pennsylvania law.

### a. Political Subdivision Tort Claims Act

With respect to plaintiff's individual-capacity claim against Detective Montgomery, the Act states that employees of a local agency are entitled to the same immunity as their employer. See 42 Pa. Cons. Stat. Ann. § 8545. However, the Act does not shield an employee from liability where his conduct constitutes a "crime, actual fraud, actual malice, or willful misconduct." Id. § 8550; Kuzel v. Krause, 658 A.2d 856, 859 (Pa. Commw. Ct.1995). "Willful misconduct, for the purposes of tort law, has been defined by [the Pennsylvania] Supreme Court [as] conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." King v. Breach, 540 A.2d 976, 981 (1988) (citing Evans v. Philadelphia Transp. Co., 212 A.2d 440 (1965)); see also In re City of Philadelphia Litig., 938 F. Supp. 1278, 1289 (E.D. Pa. 1996). This requires showing "not only that the police officer intended to commit the acts that he is accused of carrying out, but also that the officer understood that the actions he intended to take were illegal and chose to take the actions anyway." Maiale v. Youse, No. 03-5450, 2004 WL 1925004, at *11 (E.D. Pa. Aug. 27, 2004) (citing Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)).

A genuine dispute of material fact exists as to whether Detective Montgomery was aware that the arrest was illegal. Although Detective Montgomery claims that that he believed the videotape and his investigation after the events in question satisfied the "in the presence of" requirement, (Montgomery Answers ¶ 24), that claim is unsupported by law and a reasonable jury could view it as an after-the-fact justification for the arrest. Further, plaintiff alleges that the arrest was made at the behest of Ms. Lundell's father, which raises an issue of "willful misconduct." Thus, a jury is required to determine whether Detective Montgomery "understood

that the actions he intended to take were illegal and chose to take the actions anyway." Maiale,

2004 WL 1925004, at *11.

### b. Warrantless Arrest of Plaintiff

"The elements of false imprisonment are (1) the detention of another person, and (2) the

unlawfulness of such detention." Renk, 641 A.2d at 293. There is no dispute that plaintiff was

detained by Detective Montgomery. The only question is whether such detention was unlawful.

Pennsylvania Rule of Criminal Procedure 502 states,

> Criminal proceedings in court cases[4] shall be instituted by:
> (1) filing a written complaint; or
> (2) an arrest without a warrant:
>     (a) when the offense is a . . . <u>misdemeanor committed in the presence of the police officer</u> making the arrest; or
>     (b) upon probable cause when the offense is a felony or murder; or
>     (c) upon probable cause when the offense is a misdemeanor <u>not</u> committed in the presence of the police officer making the arrest, <u>when such arrest without a warrant is specifically authorized by statute.</u>

Pa. R. Crim. P. 502 (emphasis added). In other words, a warrantless arrest for a misdemeanor is

lawful only if the misdemeanor is committed in the presence of the officer or if specifically

authorized by statute.[5]

Pennsylvania courts have routinely applied this rule. See, e.g., United States v. Myers,

308 F.3d 251, 256 (3d Cir. 2002) ("The Pennsylvania legislature has specifically limited the

---

[4]    "Court Case is a case in which one or more of the offenses charged is a misdemeanor, felony, or murder of the first, second, or third degree." Pa. R. Crim. P. 103. Thus, plaintiff's case, in which two of the offenses charged were misdemeanors, was a "court case," and Rule 502 applies.

[5]    Warrantless arrests are lawful for summary offenses "when arrest is specifically authorized by law." Pa. R. Crim. P. 400(4).

authority of police officers to make warrantless arrests for misdemeanor offenses [in

Pennsylvania Rule of Criminal Procedure 502]. An officer may conduct a warrantless arrest for a

misdemeanor <u>only</u> if the offense is committed in the presence of the arresting officer or when

specifically authorized by statute." (emphasis added)); <u>Commonwealth v. Clark</u>, 735 A.2d 1248,

1251 (Pa. 1999) ("A warrant is . . . required to make an arrest for a misdemeanor, unless the

misdemeanor is committed in the presence of the police officer."); <u>see also</u> <u>Commonwealth v.

Dommel</u>, 885 A.2d 998, 1001 (Pa. Super. 2005) (relying on Rule 502 in holding that a

warrantless arrest for a misdemeanor committed outside the officer's presence is unlawful unless

"specifically authorized by statute," but concluding that another statute authorized the officer to

arrest defendant for driving under the influence).

     In this case, it is undisputed that the alleged assault, recklessly endangering another

person, and harassment occurred outside the presence of Detective Montgomery. There is no

statute or rule of law authorizing a warrantless arrest for simple assault, recklessly endangering

another person, or harassment committed outside the presence of a police officer. <u>Cf.</u> <u>Dommel</u>,

885 A.2d at 1001. Thus, Detective Montgomery unlawfully detained plaintiff in violation of Rule

502.[6]

     Defendants rely on subsection (1) of Rule 502, which states that "Criminal proceedings in

court cases shall be instituted by . . . (1) filing a written complaint." Defendants argue that the

"court case" against plaintiff was "instituted" by the criminal complaint filed by Assistant

District Attorney Pender-Brown on March 21, 2009. The Court rejects this argument.

---

[6] That the altercation was captured on the surveillance video does not change this analysis.
Defendants have not cited any cases holding that a video of the alleged crime satisfies the
requirement that the misdemeanor take place in the officer's presence, and the Court has been
unable to find any such cases.

Defendants' reading of Rule 502 renders subsection (2) superfluous; under such a reading, as long as a criminal complaint is eventually filed against a criminal defendant, the police may make a warrantless arrest without limit. That is contrary to the clear text of Rule 502. Plaintiff was arrested before the filing of the criminal complaint. Thus, her "court case" was initiated by "an arrest without a warrant," meaning that subsection (2) of Rule 502 governs her case (the subsection dealing with warrantless arrests). Because Detective Montgomery made a warrantless arrest of plaintiff for a misdemeanor not committed in his presence, he violated Rule 502 and the arrest was unlawful.

Although not specifically relied on by defendants, a Pennsylvania Superior Court case, Commonwealth v. Elliott, 599 A.2d 1335 (Pa. Super. Ct. 1991), has created some confusion regarding Rule 502 and the prohibition on warrantless arrests for misdemeanors committed outside the presence of the officer. In that case, a sixteen-year-old defendant was arrested and prosecuted for underage drinking following a car accident. Id. at 1337. The defendant in Elliott argued that there was insufficient evidence to sustain a conviction for underage drinking because the offense took place outside the presence of the officer. Id. On this issue, the defendant cited Commonwealth v. Pincavitch, 214 A.2d 280 (Pa. Super. Ct. 1965), in support of the above-cited rule that an officer may not make a warrantless arrest for a misdemeanor or summary offense committed outside the officer's presence.

The Elliott court held that Pincavitch had been superseded the Municipal Police Jurisdiction Act, specifically 42 Pa. Cons. Stat § 8952, which states:

> Any duly employed municipal police officer shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office anywhere within his primary jurisdiction as to:

14

>            (1) Any offense which the officer views or otherwise has
> probable cause to believe was committed within his jurisdiction.
>            (2) Any other event that occurs within his primary
> jurisdiction and which reasonably requires action on the part of the
> police in order to preserve, protect or defend persons or property or
> to otherwise maintain the peace and dignity of this
> Commonwealth.

This Court concludes that Elliott is unpersuasive and distinguishable; instead, the Court follows

the Pennsylvania Supreme Court decision in Clark and those of the cases cited above.[7]

        First, the Elliott court's application of Section 8952 is unpersuasive. That section was

intended solely to limit the jurisdictional reach of municipal police departments; it was not

intended to expand a police officer's power to make warrantless arrests. See Commonwealth v.

McGrady, 685 A.2d 1008, 1009 (Pa. Super. Ct. 1996) ("'[T]he entire purpose of the [Municipal

Police Jurisdiction] Act is to provide a general limitation on such activity while allowing

exceptions, for, in essence, extra-territorial activity in response to specifically identified criminal

behavior, that occur[s] within the primary jurisdiction of the police.'" (third alteration in

original) (emphasis added) (quoting Commonwealth v. Fetsick, 572 A.2d 793, 795 (Pa. Super.

1990))). No case besides Elliott and its progeny, discussed infra note 8, interprets Section 8952

in this manner, and for good reason. Section 8952 simply does not say what the Elliott court says

it does—it says nothing about warrantless arrests or Rule 502.

        Second, Elliott is distinguishable from the instant case. The defendant in Elliott did not

challenge his arrest; he challenged the sufficiency of the evidence against him. Rule 502 does not

speak to whether there can be sufficient evidence to prosecute someone for a misdemeanor

committed outside the officer's presence. Rather, it simply limits an officer's power to arrest in

---

[7]        The Court notes that the Pennsylvania Supreme Court decided Clark eight years after the
Pennsylvania Superior Court decided Elliott. The opinion in Clark does not mention Elliott.

that situation. Although the defendant in Elliott attempted to analogize his sufficiency-of-the-evidence argument to Rule 502, that Rule is inapposite to the question presented in that case and the Court rightly rejected defendant's argument. In this case, plaintiff challenges the lawfulness of Detective Montgomery's arrest, not the sufficiency of evidence against her. Thus, Elliott is inapposite to this case.[8]

### 3. Conclusion

The Court grants Defendants' Motion for Summary Judgment with respect to Count I as asserted against Detective Montgomery in his official capacity. The Court denies both parties motions for summary judgment with respect to Count I as asserted against Detective Montgomery in his individual capacity because a genuine dispute of material fact exists as to whether he acted willfully and thus whether the PSTCA bars this claim. However, the Court concludes that Detective Montgomery's arrest of plaintiff was unlawful under Rule 502.

---

[8]      Only two cases cite Elliott for the proposition that a police officer may make a warrantless arrest for a misdemeanor committed outside his or her presence. Both are distinguishable. Hughes v. Shestakov held that an officer who arrested the plaintiff without a warrant for a misdemeanor committed outside the officer's presence was entitled to qualified immunity from a suit under 42 U.S.C. § 1983. No. 00-6054, 2002 WL 1742666 (E.D. Pa. July 22, 2002). However, the Hughes court was deciding whether the officer was liable under § 1983 for a violation of the plaintiff's Fourth Amendment right to be free from unreasonable seizures, which has nothing to do with state law. See infra note 10. The Hughes court's discussion of the state-law standard for warrantless arrests was misplaced. Thus, when the Third Circuit affirmed Hughes, it did so without relying on state law, and instead relied on the federal standard for warrantless arrests announced in Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). Hughes v. Shestakov, 76 F. App'x 450, 451 (3d Cir. 2003).
        The other case, United States v. Jones, No. 00-242, 2000 WL 1839742 (E.D. Pa. Dec. 14, 2000), is distinguishable because it dealt with parolees, whom officers have the authority to "arrest without warrant, writ, rule or process" for any violation of parole. 61 Pa. Cons. Stat. § 6152.

### D. Count II—Section 1983 Claim for Illegal Seizure

In Count II, plaintiff asserts a claim against Detective Montgomery under § 1983 for a violation of her Fourth Amendment right to be free of illegal seizures.[9] "Section 1983 does not create substantive rights; instead 'it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws.'" Russoli, 126 F. Supp. 2d at 838 (quoting Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, "[a] plaintiff seeking to establish a claim under Section 1983 'must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law.'" Id. (quoting Kneipp, 95 F.3d at 1204) (alteration in original). Detective Montgomery was acting under color of state law. See id. (citing Monroe v. Pape, 365 U.S. 167 (1961)) ("Actions by an officer in his official capacity are under color of law even if they are not in furtherance of state policy and even if they violate state law."). Thus the question posed in Count II is whether Detective Montgomery violated plaintiff's Fourth Amendment rights when he arrested her.

#### 1. Fourth Amendment Reasonableness Standard

The Fourth Amendment prohibits "unreasonable" seizures. U.S. Const. amend. IV. Arrests made by police officers are seizures within the meaning of the Fourth Amendment. See Terry v. Ohio, 392 U.S. 1, 16 (1968). An arrest predicated on probable cause is reasonable and does not violate the Fourth Amendment. Virginia v. Moore, 553 U.S. 164, 171 (2008). This is

---

[9]     Plaintiff also asserts this claim against the City of Philadelphia and Detective Montgomery in his official capacity, which the Court treats as a claim against the City. This Memorandum will address federal claims against the City in its discussion of Monell in Count V. See infra Section IV.G.

true for misdemeanors and felonies alike. <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001).

As for whether probable cause existed in this case, "[i]t is well established in the Third Circuit that 'the existence of probable cause in a Section 1983 action is a question of fact' and therefore must be decided by the jury." <u>Russoli</u>, 126 F. Supp. 2d at 840 (quoting <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 401 (3d Cir. 1997)). There is a genuine dispute of material fact whether probable cause existed in this case, given the inconclusive nature of the surveillance video and the lack of information as to what Detective Montgomery knew about Ms. Lundell's and plaintiff's version of the events. However, even if a jury were to conclude that probable cause was lacking, Detective Montgomery would be entitled to qualified immunity. <u>See</u> <u>infra</u> Section IV.D.2.

Plaintiff argues that, regardless of whether there was probable cause to arrest her, her arrest violated the Fourth Amendment because he arrested her for a misdemeanor not committed in his presence. While Pennsylvania law clearly prohibits such arrests, <u>see</u> <u>supra</u> Section IV.C.2.b, whether the Fourth Amendment does also is not clear.[10] In <u>Atwater</u>, the Supreme Court

---

[10]     Plaintiff has conflated Count I and Count II. She argues that her arrest was an unconstitutional seizure because it violated Pennsylvania's prohibition on warrantless arrests for misdemeanors committed outside the presence of the officer. The Pennsylvania rule is inapposite to the constitutional question. The question at issue in Count II relates solely to whether the Fourth Amendment contains a "presence" requirement for warrantless arrests for misdemeanors.

Plaintiff can be forgiven for this mistake. Cases often conflate the state law and federal law standards for unlawful arrest and illegal seizure, respectively. <u>See, e.g.</u>, <u>Hughes</u>, 2002 WL 1742666 (analyzing § 1983 claim in context of Pennsylvania law). This confusion likely stems from the fact that, when determining whether a search incident to arrest was valid under the Fourth Amendment, courts turn to the law of the state (i.e., in order for a search incident to arrest to pass constitutional muster, the arrest must be lawful). <u>See, e.g.</u>, <u>United States v. William</u>, No. 03-315, 2004 WL 220862, at *2 (E.D. Pa. Jan. 12, 2004) (holding, in context of search-incident-to-arrest analysis, "[t]he lawfulness of an arrest is determined by reference to state law insofar as the provisions of state law do not violate the U.S. Constitution"). In this case, plaintiff is arguing

stated in a footnote, "We need not, and thus do not, speculate whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests." 532 U.S. at 340 n.11. The footnote then quoted Welsh v. Wisconsin, 466 U.S. 740, 756 (1984) (White, J., dissenting), for the proposition that "the requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment." Commentators have cited this footnote in Atwater in concluding that there is no "presence" requirement in the Fourth Amendment for misdemeanor warrantless arrests. See Thomas Y. Davies, The Fictional Character of Law-and-Order Originalism: A Case Study of the Distortions and Evasions of Framing-Era Arrest Doctrine in Atwater v. Lago Vista, 37 Wake Forest L. Rev. 239, 248–49 (2002) ("A footnote in Souter's opinion appears to signal that the majority is prepared to jettison the committed-in-the-presence-of requirement."); 3 Wayne R. Lafave, Search & Seizure § 5.1 (4th ed. 2012) ("As for . . . whether the 'in presence' requirement is constitutional in nature, the consensus is that the answer here is also no.").

In light of this authority, the Court concludes that there is no "presence" requirement for misdemeanor arrests in the Fourth Amendment. See supra Lafave. Thus Detective Montgomery did not violate the Fourth Amendment by arresting plaintiff without a warrant for a misdemeanor committed outside his presence.

### 2. Qualified Immunity

Regardless whether a jury were to find a Fourth Amendment violation, Detective Montgomery would be entitled to qualified immunity if a reasonable officer could have believed that his conduct was lawful and consistent with clearly established law, given the information he

that the arrest itself was an unconstitutional seizure; there is no question of a search incident to arrest. Thus, the Fourth Amendment's standard for reasonable seizures applies and Pennsylvania law does not.

possessed at the time. See Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir. 1995). "[W]hether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury." Curley v. Klem, 499 F.3d 199, 211 (3d Cir. 2007). Thus, the Court must determine whether a reasonable officer could have believed that he or she had probable cause to arrest plaintiff, given the information Detective Montgomery possessed at the time.[11]

"[T]he appropriate question [in this case] is the objective inquiry of whether a reasonable officer could have believed that he had probable cause to arrest [plaintiff]." Russoli, 126 F. Supp. 2d at 842. Simple assault is defined as

> (1) attempt[ing] to cause or intentionally, knowingly or recklessly caus[ing] bodily injury to another;
> (2) negligently caus[ing] bodily injury to another with a deadly weapon; [or]
> (3) attempt[ing] by physical menace to put another in fear of imminent serious bodily injury.

18 Pa. Cons. Stat. § 2701. A reasonable officer in Detective Montgomery's position could have believed that he had probable cause to arrest plaintiff for simple assault. First, plaintiff matched Ms. Lundell's description of her alleged assailant, and plaintiff acknowledged her role in the altercation when Detective Montgomery approached her at the Sunoco Store later in the evening

---

[11]     Even if the Fourth Amendment contains a "presence" requirement, Detective Montgomery would still be entitled to qualified immunity on that issue. Atwater is admittedly unclear as to whether the Fourth Amendment prohibits a warrantless arrest for a misdemeanor committed outside the presence of the officer. 532 U.S. at 340 n.11. Commentators have interpreted that case to stand for the proposition that the Fourth Amendment does not contain a "presence" requirement for warrantless misdemeanor arrests. See supra Section IV.D.1. Thus, when Detective Montgomery arrested plaintiff without a warrant for a misdemeanor committed outside his presence, he did not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known,'" at least insofar as the Fourth Amendment is concerned. Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

in question. Second, the surveillance video is not inconsistent with Ms. Lundell's account of the altercation, in which she stated that she was waiting in line and plaintiff followed her into the Store and attacked her. [12] Although Detective Montgomery might have been mistaken in his probable-cause determination, see supra Section IV.D.1, the Court concludes that, given his personal knowledge of the incident, there is no set of facts under which his determination would be unreasonable. [13] Cf. Ciardiello v. Sexton, 390 F. App'x 193, 200 (3d Cir. 2010) (holding that officer was not entitled to qualified immunity because officer had no first-hand information upon which his probable-cause determination was based).

### 3. Conclusion

The Court concludes that Detective Montgomery is entitled to qualified immunity for Count II, a § 1983 claim for illegal seizure. [14] Thus, the Court grants Defendants' Motion for Summary Judgment with respect to claims against Detective Montgomery in his individual capacity for a violation of the Fourth Amendment's prohibition against illegal seizures.

---

[12]     Plaintiff's sole probable-cause argument is relegated to a footnote in which she argues, "There are no disputed facts that there was no 'probable cause' to arrest the [p]laintiff because there was a warrantless arrest in violation of statutes." (Pl.'s Mot. Summ. J. 20 n.7.) Plaintiff is wrong. The fact that an officer makes a warrantless arrest has no bearing on whether the arrest was supported by probable cause. See generally Atwater, 532 U.S. 318.

[13] These two findings are not contradictory. It is well-established that the doctrine of qualified immunity permits a broader range of activity than the strict probable-cause requirement. See Rusch v. Versailles Borough, No. 05-0138, 2006 WL 2659275 (W.D. Pa. Sept. 15, 2006) ("Qualified immunity in this context is broad enough to encompass mistaken judgments regarding probable cause, so long as those judgments are not plainly incompetent or made in knowing violation of the law." (citing Hunter v. Bryant, 502 U.S. 221, 229 (2001)).

[14]     That Detective Montgomery reasonably could have believed he had probable cause to arrest plaintiff for simple assault disposes of Count II in its entirety. The Third Circuit has held that probable cause for one charge absolves the defendant of liability under § 1983 for all charges at issue. See Wright v. City of Phila., 409 F.3d 595, 604 (3d Cir. 2005).

### E. Count IV[15]—Malicious Prosecution

In Count IV, plaintiff asserts a claim for malicious prosecution under both § 1983 and Pennsylvania law against Detective Montgomery in his individual capacity. This Memorandum will address each in turn.

### 1. Malicious Prosecution Under the United States Constitution[16]

"To prevail in a Section 1983 malicious prosecution action, a plaintiff must show [that] (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

Plaintiff has failed to demonstrate the existence of the first element. Because each element cited above is a necessary element of a malicious prosecution, see Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009), this Memorandum will address only the element that plaintiff has failed to meet.

---

[15]   Count III asserts a claim of civil conspiracy against Detective Montgomery and Officers Hite and Baker. For clarity, the Court will address the civil conspiracy count after it addresses the substantive claims against Detective Montgomery which plaintiff argues underlie the civil conspiracy.

[16] Plaintiff also asserts this claim against Detective Montgomery in his official capacity, which the Court treats as a claim against the City. This Memorandum will address federal claims against the City in its discussion of Monell in Count V. See infra Section IV.G.

### a. Initiation of a Criminal Proceeding

It is undisputed that a criminal proceeding was initiated against plaintiff. However, defendants correctly argue that, as a police officer rather than a prosecutor, Detective Montgomery was not the ones who initiated it.

"In most cases, 'a prosecutor rather than a police officer initiates a criminal prosecution.'" Zeglen v. Miller, No. 04-1940, 2008 WL 696940, at *8 (M.D. Pa. Mar. 12, 2008) (quoting Houston v. City of Phila., No. 05-cv-372, 2007 U.S. Dist. LEXIS 40026, at *20 (E.D. Pa. May 31, 2001)); see also Albright v. Oliver, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring) ("The principal player in carrying out a prosecution . . . is not police officer but prosecutor."); Harris v. City of Phila., No. 97-3666, 1998 WL 481061, at *5 (E.D. Pa. Aug. 14, 1998) ("In most circumstances, a plaintiff can not proceed against a police officer for a claim of malicious prosecution because a prosecutor, not a police officer, 'initiates' criminal proceedings against an individual."); Merrero v. Micewski, No. 96-8534, 1998 WL 414724, at *15 (E.D. Pa. July 22, 1998). A plaintiff can proceed against a police officer for malicious prosecution only if the officer "'fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.'" Zeglen, 2008 WL 696940, at *8  (quoting Telepo v. Palmer Twp., 40 F. Supp. 2d 596, 610 (E.D. Pa. 1999)).

In this case, Assistant District Attorney Pender-Brown signed the Criminal Complaint against plaintiff. Detective Montgomery's name does not appear on the Criminal Complaint. Thus, the decision to pursue the prosecution was not Detective Montgomery's; it was Assistant District Attorney Pender-Brown's. Under the cases cited above, plaintiff cannot succeed on her

§ 1983 claim for malicious prosecution against Detective Montgomery because she has produced no evidence that he "'fail[ed] to disclose exculpatory evidence to prosecutors, ma[de] false or misleading reports to the prosecutor, omit[ted] material information from the reports, or otherwise interfere[d] with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.'" Id. at *8 (quoting Telepo, 40 F. Supp. 2d at 610).

Plaintiff argues that, under Pennsylvania Rule of Criminal Procedure 502, the criminal proceeding is "instituted" by a warrantless arrest. Plaintiff cites no authority for her argument, and she fails to account for Harris, Houston, Merrero, and Zeglen. Those cases all involved arrests that took place in Pennsylvania, and thus were subject to Rule 502, yet none of them held that the police officer instituted the criminal proceeding with an arrest.

Because plaintiff has not asserted any claims against Assistant District Attorney Pender-Brown and has produced no evidence of any behavior by Detective Montgomery that would "interfere with the prosecutor's ability to exercise independent judgment," Zeglen, 2008 WL 696940, at *8, plaintiff has failed to establish the first element of her § 1983 claim for malicious prosecution. The Court thus grants Defendants' Motion for Summary Judgment with respect to plaintiff's § 1983 claim for malicious prosecution.

### 2. Malicious Prosecution Under Pennsylvania Law[17]

"In Pennsylvania, a party bringing a malicious prosecution claim must demonstrate that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants

---

[17]     Plaintiff also makes this claim against Detective Montgomery in his official capacity, which the Court treats as a claim against the City. See supra Section IV.B. However, the City is immune from this state-law claim under the PSTCA for the same reasons described above with respect to Count I. See supra Section IV.C.1.

acted maliciously or for a purpose other than bringing the plaintiff to justice.'" [18] Bristow v. Clevenger, 80 F. Supp. 2d 421, 432 (M.D. Pa. 2000) (quoting Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996)). Although the elements appear similar to those in a § 1983 claim for malicious prosecution (except for the requirement of a constitutional violation under § 1983), the elements under Pennsylvania law differ in substance. As explained below, genuine disputes of material fact exist as to the third and fourth elements. Thus, both parties' motions are denied as to plaintiff's state-law malicious-prosecution claim.

### a. First Element—Initiation of a Criminal Proceeding

Unlike federal law, Pennsylvania does not limit malicious prosecution claims to prosecutors. C.f. supra Section IV.E.1.a. Rather, a plaintiff may bring a malicious prosecution claim against the police officer who arrested or cited plaintiff and referred plaintiff's case to prosecutors. See Neczypor v. Jacobs, 169 A.2d 528 (Pa. 1961) (affirming jury verdict in favor of plaintiff for claim of malicious prosecution against police officer who arrested plaintiff); La Frankie v. Miklich, 618 A.2d 1145 (Pa. Cmwlth. Ct. 1992) ("[Plaintiff's] cause of action [for malicious prosecution] was complete by alleging his arrest by [defendant, a police officer,] without probable cause."). As the Restatement (Second) of Torts explains, "criminal proceedings [for the purpose of a malicious prosecution claim] may be instituted by lawful and valid arrest of the accused on a criminal charge." § 654 cmt. e; see also Bradley v. Gen. Acc. Ins. Co., 778 A.2d

---

[18]     If a jury finds the existence of malice—the fourth element of plaintiff's state-law malicious prosecution claim—the PSTCA's exception for willful misconduct would apply and the PSTCA would not bar plaintiff's claim for malicious prosecution against Detective Montgomery in his individual capacity. See 42 Pa. Cons. Stat. § 8550; Eckman v. Lancaster City, 742 F. Supp. 2d 638, 657 (E.D. pa. 2010). However, the PSTCA does bar plaintiff's claim against Detective Montgomery in his official capacity, which the Court treats as a claim against the City of Philadelphia. See 42 Pa. Cons. Stat. Ann. § 8542(a)(2) (2005); supra Section IV.C.1.

707, 710–11 (Pa. Super. Ct. 2001) ("The law in Pennsylvania on malicious prosecution has developed to a large extent based upon the Restatement (Second) of Torts.").

Under Pennsylvania law, Detective Montgomery initiated the criminal proceedings against plaintiff. He led the investigation into the altercation and referred plaintiff for prosecution. Thus, he was "intimately involved with the criminal proceedings against [plaintiff] from beginning to end. This is sufficient to say that [he] 'initiated' the proceedings along with others." Shoop v. Dauphin Cnty., 766 F. Supp. 1327, 1338 (M.D. Pa. 1991) (analyzing Pennsylvania state-law claim for malicious prosecution). Thus, plaintiff has satisfied the first element of her state-law malicious prosecution claim.

### b. Second Element—Criminal Proceedings Ended in Plaintiff's Favor

Under the Restatement (Second) of Torts, "the formal abandonment of the proceedings by the public prosecutor" constitutes "terminat[ion] in favor of the accused." § 659; see also Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993) (adopting Restatement definition). Although no Pennsylvania case has held specifically that a dismissal due to a complaining witness's failure to appear constituted a termination in plaintiff's favor, courts in other states that follow the Restatement definition have held that a complaining witness's failure to appear constitutes a termination in plaintiff's favor. See, e.g., Cox v. Wiliams, 593 N.W.2d 173, 175 (Mich. 1999) (citing cases demonstrating "the general rule that dismissal of criminal charges at the insistence of the prosecutor or the complaining witness implies a lack of reasonable ground for prosecution and is a favorable termination of the proceeding for purposes of a malicious prosecution cause of action"); see also Weissman v. K-Mart Corp., 396 So. 2d 1164, 1168 (Fla. Dist. Ct. App. 1981).

The Court concludes that plaintiff's case terminated in her favor when the Municipal Court of Philadelphia County dismissed the case on October 26, 2009, due to Ms. Lundell's

failure to appear in court. Thus, plaintiff has satisfied the second element of her state-law malicious prosecution claim.

### c. Third Element—Probable Cause

"Probable cause is a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charged." La Frankie v. Miklich, 618 A.2d 1145, 1148 (Pa. Commw. Ct. 1992). For the purposes of a state-law malicious prosecution claim, the question of probable cause is a question of law for the Court. See Leonard v. Cole, 578 A.2d 53, 55 (Pa. Commw. Ct. 1990). However, where the existence of probable cause turns on disputed material facts, those disputed factual issues must be submitted to the jury. Kelley v. Gen. Teamsters, Chauffeurs, & Helpers, Local Union 249, 544 A.2d 940, 941 (Pa. 1988).

In this case, facts material to the issue of probable cause are in controversy.[19] Id. The surveillance video does not conclusively demonstrate who struck first and whether either plaintiff or Ms. Lundell was acting in self-defense. See supra Section IV.D.2.a. There is evidence that plaintiff told Detective Montgomery, Officer Hite, and Officer Baker her side of the story, but there is no evidence as to exactly what she said. (See Montgomery Answers ¶ 13 ("She acknowledged her involvement in the incident, but I don't remember exactly what she said.").) On that record, there is insufficient evidence for the Court to determine precisely what Detective Montgomery knew when he made his arrest. Defendants have also failed to present any evidence

---

[19]      Although the Court held that Detective Montgomery was entitled to qualified immunity on the question of probable cause for plaintiff's illegal seizure claim, the qualified-immunity inquiry is broader than the question of whether probable cause actually existed because it asks whether a reasonable officer could have concluded that there was probable cause. See supra Section IV.D.2; note 13. To determine whether probable cause actually existed, more facts relating to the officers' interviews of plaintiff and Ms. Lundell are required.

demonstrating whether Detective Montgomery found Ms. Lundell to be more credible than

plaintiff and, if so, why. Thus, a jury is required to determine what Detective Montgomery knew

of the events in question at the time he arrested plaintiff. However, the jury will not be

responsible for the ultimate determination of probable cause. Pa. SSJI (Civ.) § 17.60.  That is a

question for the Court. Rather, the jury will be responsible for determining solely whether

plaintiff told her side of the story to Detective Montgomery and whether Detective Montgomery

had reason to credit Ms. Lundell's account over that of plaintiff's, when considered in light of all

the available evidence.

### d. Fourth Element—Malice

"In order for plaintiff to recover [s]he is required to prove not only lack of probable

cause, but the <u>existence of malice</u>." <u>Hugee v. Pa. R. Co.</u>, 101 A.2d 740, 743 (Pa. 1954). "The

question of the existence of malice is always a question of fact exclusively for the jury." <u>Id.</u>

"Malice may be inferred from the absence of probable cause." <u>Lippay v. Christos</u>, 996 F.2d

1490, 1502 (3d Cir. 1993).

A reasonable jury could find that Detective Montgomery acted with malice. First, if the

jury finds that Detective Montgomery acted without probable cause, it may infer malice. <u>Id.</u>

Second, there is evidence that Detective Montgomery spoke to Ms. Lundell's father before

arresting plaintiff.[20] Plaintiff argues that Ms. Lundell's father, a high-ranking police officer from

a neighboring town, influenced Detective Montgomery to arrest plaintiff rather than Ms. Lundell.

---

[20]     A page from the police file demonstrates that Ms. Lundell's father may have played more
of a role in the arrest of plaintiff than Detective Montgomery stated in his response to plaintiff's
interrogatories. The document states, "HAVE A DELAWARE DETECTIVE RESPONDING
ALSO (HE'S IN A MARKET UNIT) HE IS THE FATHER OF THE FEM COMPL." (Pl.'s
Mot. Summ. J. Ex. K.)

28

Thus, there exists a genuine dispute of material fact as to whether Detective Montgomery acted with malice. A jury is required to determine the existence of malice.

### e. Conclusion

Plaintiff has satisfied the first two elements of her state-law malicious prosecution claim. However, genuine disputes of material fact exist as to the third and fourth elements. Thus, the Court denies both parties' motions with respect to plaintiff's state-law malicious-prosecution claim.

### F. Count III—Civil Conspiracy

Plaintiff brings claims for civil conspiracy against Detective Montgomery, Officer Hite, and Officer Baker under § 1983 and state law in their official and individual capacities.[21] The Court has concluded that plaintiff's substantive § 1983 claims fail because plaintiff's constitutional rights were not violated; thus her § 1983 conspiracy claims fail as well. See Dennison v. Pa. Dep't of Corr., 268 F. Supp. 2d 387, 402 (M.D. Pa. 2003) ("[T]he moving defendants did not violate [plaintiff's] rights under the Fourteenth Amendment. Accordingly, he can not sustain his corresponding conspiracy claim under section 1983.").

To state a claim for civil conspiracy under Pennsylvania law, plaintiff must show "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. Ct. 2008). "It has long been the settled rule in this Commonwealth that proof of

---

[21]     The Court treats the official-capacity claims as claims against the City. See supra Section IV.B. The Court will address the federal claims against the City in its discussion of Monell. See infra Section IV.G. The PSTCA bars plaintiff's state-law civil-conspiracy claim against the City for the same reasons it bars plaintiff's claim against the City in Count I. See supra Section IV.C.1.

conspiracy must be made by full, clear and satisfactory evidence. The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." Fife v. Great Atl. & Pac. Tea Co., 52 A.2d 24, 39 (Pa. 1947); see also Phillips, 959 A.2d at 437.

Genuine disputes of material fact exist as to whether there was a conspiracy to unlawfully arrest or maliciously prosecute plaintiff. Officers Hite and Baker were involved in the investigation into the altercation. Further, Detective Montgomery summoned Officers Hite and Baker to the Sunoco Store to accompany plaintiff to the police station after plaintiff had gone back to the Store to find witnesses. However, it is unclear whether Officers Hite and Baker knew that Detective Montgomery was going to arrest plaintiff later that night at the police station. A reasonable jury could find that the three of them had a "common purpose" to arrest plaintiff unlawfully—that is, without a warrant for a misdemeanor committed outside of the presence of an officer or to maliciously prosecute plaintiff. However, a reasonable jury could also find that Hite, Baker, and Montgomery were not "acting with a common purpose." Phillips, 959 A.2d at 437.

Genuine disputes of material fact also exist as to whether the PSTCA bars the claim in Count III as asserted against the individual officers in their individual capacities for the same reasons that a genuine issues of material fact exist as to the claim in Count I against Detective Montgomery in his individual capacity. See supra Section IV.C.2.a. A jury is required to determine whether Detective Montgomery, Officer Hite, and/or Officer Baker acted willfully.

Because genuine disputes of material fact exist as to plaintiff's state-law civil-conspiracy claim against Detective Montgomery and Officers Hite and Baker in their individual capacities, the Court denies both parties' motions for summary judgment on this issue.

### G. Count V—Claims Against the City of Philadelphia

The PSTCA bars all claims against the City of Philadelphia for "injuries caused by [its] own acts or the acts of [its] employees that constitute 'a crime, actual fraud, actual malice or willful misconduct.'" Russoli, 126 F. Supp. 2d at 867–68 (quoting 42 Pa. Cons. Stat. Ann. § 8542(a)(2)); see supra Section IV.C.1. Thus, as explained above, the PSTCA bars plaintiff's state-law claims against the City for false arrest (Count I), supra Section IV.C.1; malicious prosecution (Count IV), supra note 17; and civil conspiracy (Count III), supra note 21.

Plaintiff's claims against the City of Philadelphia based on alleged violations of federal law—specifically § 1983—are governed by Monell v. City of New York Department of Social Services, 436 U.S. 658 (1978). However, as explained above, the Court grants Defendants' Motion for Summary Judgment on all of plaintiff's federal claims. A municipality "cannot be vicariously liable under Monell unless one of [the municipality]'s employees is primarily liable under section 1983 itself." Williams v. Borough of West Chester, 891 F.2d 458, 467 (3d Cir. 1989); see also Beckinger v. Twp. of Elizabeth, 697 F. Supp. 2d 610, 631–32 (W.D. Pa. 2010) ("It is axiomatic that if [defendants] are entitled to qualified immunity, the Township likewise cannot be liable for their conduct.").

Accordingly, the Court grants Defendants' Motion for Summary Judgment with respect to all claims—both state and federal—against the City of Philadelphia.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted as to (1) all claims against the City of Philadelphia Police Department; (2) all claims against the City of Philadelphia; (3) Count II, a claim under § 1983 for illegal seizure against Detective Montgomery in his individual capacity; and (4) that part of Count IV that asserts a claim under

§ 1983 for malicious prosecution against Detective Montgomery in his individual capacity. Defendants' Motion for Summary Judgment is denied in all other respects and Plaintiff's Motion for Summary Judgment is denied.

The following claims and issues remain for adjudication: with respect to Count I, whether Detective Montgomery acted willfully and thus whether the PSTCA bars plaintiff's claim; with respect to Count III, whether Detective Montgomery, Officer Hite, and Officer Baker acted with a common purpose and whether they acted willfully for purposes of the PSTCA; and, with respect to Count IV, the facts underlying the Court's probable-cause determination and whether Detective Montgomery acted with malice.

An appropriate Order follows.